IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OTIS E. WEST, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF SALISBURY, ) <br> NORTH CAROLINA, ) <br> ) <br> Defendant. ) | **MEMORANDUM OPINION**, <br> **ORDER AND RECOMMENDATION** <br><br> 1:10CV646 |

This matter is before the court on Defendant's motion for summary judgment (docket no. 19). Plaintiff has responded in opposition to the motion, and Defendant has replied. The matter is thus ripe for disposition, and the parties have consented to the jurisdiction of the magistrate judge. (*See* Order of Reference, docket no. 16). For the reasons discussed herein, the court will grant Defendant's motion for summary judgment; and the matter will be dismissed

## I. PROCEDURAL BACKGROUND

Plaintiff filed this action on August 20, 2010, asserting claims against Defendant City of Salisbury under 42 U.S.C. § 2000e-5(f) (Title VII) and 42 U.S.C. § 1981 for race and gender discrimination. (docket no. 1.) Plaintiff requests a declaratory judgment, injunctive relief, compensatory damages, a jury trial, and other appropriate relief. Defendant contends that summary judgment is proper as to all claims because there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

## II. FACTUAL BACKGROUND

On November 3, 2008, Defendant[1] hired Plaintiff as a temporary employee in its Solid Waste Department. (Compl. ¶ 8). Defendant informed Plaintiff that this position could become permanent after ninety days if he performed his duties satisfactorily. (*Id.*; Def.'s Mem. Supp. Summ. J., Ex. B, Brian Moore Aff. ¶ 6). Plaintiff's primary responsibility in his position with Defendant was to drive the department's vehicles. Defendant has characterized employment as a driver of the Solid Waste Department's vehicles as "high risk" and "safety sensitive" because mishandling a department vehicle "could place the employee and the general public at risk of serious injury." (Def.'s Mem. 3-4).

Prior to hiring Plaintiff, Defendant checked his driving record. (Moore Aff. ¶ 6). Despite Plaintiff's apparent numerous traffic violations, Defendant determined that Plaintiff was qualified to work for it — presumably because of the amount of time that had passed since the violations — and hired him because of his persistence in seeking employment with the city. (Moore Aff. ¶¶ 6-7; Def.'s Mem., Ex. E, Pl. Dep. 23:6-18).

After an orientation and training period, other drivers began to report problems with Plaintiff's operation of department vehicles – including that Plaintiff did not completely stop at stop signs, failed to obey speed limits, drove too close to the dividing line (and then to mailboxes), and executed turns that were too wide for

---

[1] Unless otherwise noted, the court will refer to the City of Salisbury and those making decisions on its behalf (such as Plaintiff's supervisor) as "Defendant."

oncoming traffic. (Def.'s Mem., Ex. A, Incident Report by Brian Moore; Moore Aff. ¶ 11; Def.'s Mem., Ex. C, Daniel Rogers Aff. ¶¶ 5-6). When the Solid Waste Department employees were informed that a citizen had reported that one of them failed to stop at a red traffic light, another driver reported that it was the Plaintiff who had done so. (*See* Incident Report; Moore Aff. ¶ 12). Plaintiff disputes this allegation.

Plaintiff's supervisor, Brian Moore, then "inquired into [Plaintiff's] personnel record to learn of his prior driving history."[2] (Moore Aff. ¶ 13). Plaintiff's driving record included eleven speed limit violations and seven license suspensions—one for an assessment of eight points against his license over a period of three years. (Def.'s Mem., Ex. D, "Driver History").

On January 30, 2009, and prior to the end of the aforementioned ninety-day temporary employment period, Defendant terminated Plaintiff's employment. (Incident Report). Defendant replaced Plaintiff with a white female, who was offered a permanent position in less than ninety days. (Moore Aff. ¶ 16).

Plaintiff alleges that Defendant discriminated against him on the basis of his race (black) by punishing him more harshly (termination) than an employee of another race (white). Plaintiff alleges that the white employee failed to stop at a red traffic light and that the white driver was not disciplined or discharged. (Compl. ¶

---

[2] It is unclear if Defendant had initially acquired a less detailed driving record and then requested a more detailed driving record or if Defendant initially obtained the more detailed driving record but Plaintiff's supervisor did not look at it.

3

8(h)).  Defendant contends that it did not discriminate against Plaintiff in the disciplinary context because the white employee and Plaintiff were not comparable; the white employee had worked in the Solid Waste Department for over six years.[3] Defendant, furthermore, argues that it did discipline the white employee as it disciplined Plaintiff; it terminated the white employee after a serious driving infraction (and after it terminated Plaintiff).  (Mem. 9-11; Pl. Dep. 79:11-19).

Plaintiff also alleges that Defendant discriminated against him on the basis of his race and sex by terminating him and replacing him with an employee of another race and sex who was offered a permanent position in less than the ninety days required for Plaintiff's position to become permanent.  Defendant argues that it did not discriminate against Plaintiff in termination and replacement; it hired the replacement employee because she was qualified for the position and offered her a permanent position in less than ninety days because Defendant was concerned the permanent position would be eliminated if not filled.  (Moore Aff. ¶ 16).

## III.  DISCUSSION

### A.  Summary Judgment Standard

---

[3] In its Memorandum in Support of Summary Judgment, Defendant asserts that the white employee "had been a permanent employee for the City for ten (10) *years*." (Mem. 9) (emphasis in original).  Plaintiff's supervisor, however, states that the white employee had worked in the Solid Waste Department for over six years.  (Incident Report).  It is unclear if the white employee had worked in a different department of the City prior to his employment with the Solid Waste Department and Defendant is including that time in its calculation or if Defendant misstated the length of the white employee's service to the City. It is uncontroverted, in any case, that the white employee worked for Defendant for at least six years.

4

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## B. Employment Claims

Plaintiff's claims are based on Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this burden-shifting structure, known as the "*McDonnell Douglas*" framework, the plaintiff must first plead certain facts creating an inference of discrimination and referred to as the plaintiff's *prima facie* case. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). In a case of discharge under the *McDonnell Douglas* framework, a Title VII plaintiff must establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate

expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Miles v. Dell*, 429 F.3d 480, 485 (4th Cir. 2005).

Once a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action; however, this burden "is one of production, not persuasion." *Reeves*, 530 U.S. at 142; *Holland*, 487 F.3d at 214. If the employer demonstrates a legitimate, nondiscriminatory reason for the action, the presumption of unlawful discrimination created by the *prima facie* case "drops out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). Pretext may be established "by proving that the defendant's explanation for an employment decision is 'unworthy of credence' or that the defendant's explanation is false." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) (quoting *Reeves*, 530 U.S. at 147).

Despite this burden-shifting structure, the responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It is thus not enough for a plaintiff merely to raise an inference of discrimination. A plaintiff instead bears the

7

ultimate burden of proving that the decision was made not on any proffered grounds but on the basis of impermissible discriminatory grounds. *Reeves*, 530 U.S. at 143.

Plaintiff here has not set forth a *prima facie* case of discrimination. Plaintiff appears to contend that he was discriminated against in two primary contexts: first, that he was terminated and a white female was hired to take his place and that the white female was made a permanent employee after less than ninety days. Second, Plaintiff argues that a white male employee was not terminated for the same conduct which led to Plaintiff's termination. Plaintiff argues that "the treatment of the female employee, as compared to Plaintiff, is direct evidence of discrimination." (Pl. Resp. 4). It is unclear if Plaintiff means that replacing him with the female employee is direct evidence of discrimination or that hiring the female employee as a permanent employee after less than ninety days is direct evidence of discrimination, or both. It is also unclear whether Plaintiff argues that this alleged discrimination was also based on race (the female employee is white). Plaintiff, however, provides no direct evidence of discrimination in any of these contexts, and his "own naked opinion, without more, is not enough to establish a prima facie case of . . . discrimination." *Goldberg*, 836 F.2d at 848. The mere fact that an employee of a different class or classes was treated differently, furthermore, is not direct evidence that membership in a class or classes motivated the differential treatment.[4] If such a fact, by itself,

---

[4] Plaintiff also provides the following information concerning the City of Salisbury's employment statistics: "[i]n the Solid Waste Department the current ethnic make-up is 55% white males [6], 35% (4) black males, and 9% (1) white female. The Defendant City employees number in excess of 500 with approximately 90 black employees or 18%. The black population is 40%." (Compl. ¶ 8(p)-(q)). It is unclear if this information is offered as

8

could provide direct evidence of discrimination, the burden-shifting *McDonnell Douglas* framework would be unnecessary; that structure was created to *help* plaintiffs who *could not* provide direct evidence of discrimination.

Because Plaintiff fails to provide direct evidence of discrimination, he must establish a *prima facie* case of discrimination. In order to do so in the context of termination, he must show that (1) he is a member of a protected class or classes; (2) that he was terminated; (3) that he was performing his job duties at a level that met his employer's legitimate expectations at the time of his termination; and (4) that the position remained open or was filled by a similarly qualified applicant outside his protected class(es). *McDonnell Douglas*, 411 U.S. at 802; *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007).

Plaintiff does not establish a *prima facie* case of discrimination in this context because he fails to show that he was performing his job duties at a level that met his employer's legitimate expectations. Plaintiff does not argue that Defendant's expectations of him were not legitimate; furthermore, such an argument would fail. Defendant employed Plaintiff to drive vehicles. When requiring a worker employed to drive — and especially one employed to drive dangerous vehicles — safety is a legitimate expectation. Plaintiff can thus only establish a *prima facie* case of discrimination in this context by showing that he performed his job duties

---

evidence of discrimination by Defendant. Just as when an employee of a different class is treated differently, however, this information alone (e.g., without information about recruitment, applications, etc.) cannot provide direct evidence of discrimination. It provides at most a weak inference of discrimination.

satisfactorily. Plaintiff cannot do so because he did not drive Defendant's vehicles safely; in a relatively short period of time, he committed numerous safety infractions. His past driving record indicated that these were not isolated events, and his driving habits while employed by Defendant indicated that he had not resolved the issues presented by his driving record. Plaintiff failed to meet Defendant's legitimate expectations and thus cannot establish a *prima facie* case of discrimination in this context. Summary judgment should therefore be granted for Defendant on Plaintiff's claims regarding the white female who replaced him.

Plaintiff further argues that the Defendant discriminated against Plaintiff when Defendant allegedly disciplined a white employee less harshly than it disciplined Plaintiff. Specifically, Plaintiff argues that Mark Hughes, a white male, had numerous driving infractions, including running a red light, and that he was not terminated. Plaintiff again offers no direct evidence of this alleged discrimination. As explained above, the mere fact that an employee of a different class was treated differently cannot be direct evidence that membership in the class was the reason for the differential treatment. The necessary analysis is in terms of racial discrimination in the enforcement of employee disciplinary measures, which is governed by *Cook v. CSX Transportation Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Under this analysis, therefore, in order to establish a *prima facie* case, Plaintiff must show (1) that he is a member of a protected class, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct outside the

protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against other employees. *Id.*; *see also Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Although "precise equivalence" between employees' actions need not be shown, the relevant conduct must be of "comparable seriousness" given the relative culpability of the comparable employees and the harm caused. *Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985).

Plaintiff alleges that Hughes engaged in conduct similar to Plaintiff's and that he was not disciplined as severely as Plaintiff. The record shows, however, that Plaintiff was terminated because of the *number* and *seriousness* of his infractions, *given the length of his employment*. Hughes had worked for Defendant for *six years*; Plaintiff had worked for Defendant for *less than three months*. The ratio of Hughes' infractions to the length of his employment was thus far less than that of Plaintiff. One failure to stop at a red traffic light *in ten years* (or even six years (*see* n.3, p.3)) obviously is less serious than a failure to do so *after less than three months of employment*. Hughes was terminated, moreover, within a year of Plaintiff's termination, when he committed an infraction that was particularly grievous (allowing a vehicle to roll into another), even given the length of his employment.

For the purposes of this discussion, it does not matter whether these comparisons of the treatment of Plaintiff and Hughes indicate that Plaintiff has not

11

established a *prima facie* case of discrimination in the disciplinary context or that Defendant had a legitimate, nondiscriminatory reason for allegedly treating the two employees differently. Simply put, Plaintiff has not put forth evidence to prove that Defendant's decisions were based on race rather than the permissible reasons proffered by Defendant. Plaintiff has failed to demonstrate that he was treated differently from any employee outside of the protected class who engaged in misconduct similar to his. In other words, in the discriminatory discipline context, Plaintiff has put forth no evidence that he suffered more severe discipline for his misconduct as compared to those employees outside the protected class. As such, there is no genuine issue of material fact. The court thus will grant summary judgment for Defendant and will dismiss Plaintiff's claims regarding discrimination in the disciplinary context.

## IV.  CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment (docket no. 19) is **GRANTED** and this action is **DISMISSED** with prejudice. A judgment conforming to this Order will be entered simultaneously herewith.

_____
WALLACE W. DIXON
United States Magistrate Judge

September 2, 2011